IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

```
JULIUS WALKER and              )
JUDY ANN WALKER,               )
                               )
        Plaintiffs,            )
                               )
                               )
v.                             )    No. 2:10-CV-164
                               )
MOLDEX METRIC, INC., et al.,   )
                               )
        Defendants.            )
```

**MEMORANDUM OPINION**

This civil action is before the court for consideration of "Defendant Moldex-Metric, Inc.'s Motion for Summary Judgment" [doc. 39]. Defendant 3M Company ("3M") has filed a motion for summary judgment [doc. 41] that joins and incorporates by reference the arguments and exhibits relied on by Moldex-Metric, Inc. ("Moldex") in its motion and supporting memorandum. Plaintiffs have filed a response to both motions [doc. 44], and Moldex has submitted a reply [doc. 45], which 3M adopted by reference [doc. 46]. Oral argument is unnecessary, and the motions are ripe for the court's determination. For the reasons that follow, the motions will be granted, and this case will be dismissed.

# I.

*Background*

Plaintiffs filed their complaint on August 6, 2010, alleging damages resulting from Julius Walker's exposure to silica and silica dust. The first action plaintiffs filed in this court concerning these same claims was dismissed in 2009 based upon matters involving the Tennessee Silica Claims Priorities Act ("TSCPA") and unrelated to the issues presently before the court.

On September 16, 2010, plaintiffs filed for Chapter 7 bankruptcy relief in the United States Bankruptcy Court for the Eastern District of Tennessee. Included in this record are exhibits to plaintiffs' bankruptcy petition. Under item number 4 of the Statement of Financial Affairs, plaintiffs were required to list all "suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." The plaintiffs identified a collection matter in the General Sessions Court of Hawkins County that was pending, but made no mention of this civil action. When plaintiffs signed the statement, they did so under penalty of perjury that it was true and correct.

Also as part of their bankruptcy petition, plaintiffs completed a Schedule B - Personal Property form. Item number 21 of Schedule B required plaintiffs to list "other contingent and unliquidated claims of every nature." They checked the column headed "None" in response to this inquiry. In the Declaration Concerning Debtor's Schedules,

2

plaintiffs signed under penalty of perjury that the foregoing schedules were true and correct.

On December 22, 2010, the bankruptcy court by order discharged plaintiffs' debts, and the case was closed on January 7, 2011. On April 14, 2011, Moldex filed this motion for summary judgment based on the doctrine of judicial estoppel, because plaintiffs had not disclose this lawsuit in their bankruptcy filings. The bankruptcy trustee moved to reopen the bankruptcy estate on April 29, 2011, on the basis that there was "a newly discovered potential asset discovered by the Trustee after the closing of the Debtors' Chapter 7 Case."

II.

*Standard of Review*

Defendant's motion is brought pursuant to Federal Rule of Civil Procedure 56, which governs summary judgment.[1] Rule 56(a) sets forth the standard for governing summary judgment and provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant

---

[1] Federal Rule of Civil Procedure 56 was amended effective December 1, 2010. The Advisory Committee Notes to the 2010 amendments reflect that the standard for granting summary judgment "remains unchanged," and "[t]he amendments will not affect continuing development of the decisional law construing and applying [that standard]." Fed. R. Civ. P. 56 advisory committee's note. The summary judgment motion in this case was filed after the revised version became effective and therefore is governed by that version. *Cf. Wheeler v. Newell*, No. 09-4549, 2011 WL 204457, at *3 n.3 (6th Cir. Jan. 24, 2011) ("The motion for summary judgment in this case was filed prior to December 1, 2010, and is governed by the version of Rule 56 that was in effect at the time the motion was filed.").

3

is entitled to judgment as a matter of law." The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion." This can be done by citation to materials in the record, which include depositions, documents, affidavits, stipulations, and electronically stored information. Fed. R. Civ. P. 56(c)(1)(A). Rule 56(c)(1)(B) allows a party to "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).

In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

4

III.

*Analysis*

Moldex argues that plaintiffs' claims in this civil action are barred by the doctrine of judicial estoppel because they failed to disclose them to the bankruptcy court. "The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition." *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 546 F.3d 752, 757 (6th Cir. 2008) (quoting *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002)) (internal quotation marks omitted); *see also New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."). The purpose of the doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire,* 532 U.S. at 749-50 (citations omitted). The Sixth Circuit "has stressed that the doctrine of judicial estoppel is utilized in order to preserve 'the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.'" *Browning*, 283 F.3d at 776 (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)).

The application of judicial estoppel is not appropriate, however, in cases involving conduct that amounts to mistake or inadvertence. *Browning*, 283 F.3d at 776. In the bankruptcy context, "[t]wo circumstances in which a debtor's failure to disclose might be deemed inadvertent are: (1) 'where the debtor lacks knowledge of the factual basis of the undisclosed claims,' and (2) where 'the debtor has no motive for concealment.'" *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010) (quoting *Browning*, 283 F.3d at 776). The Sixth Circuit in *Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894 (6th Cir. 2004), noted that the "absence of bad faith" was also a factor to be considered when determining whether judicial estoppel applies. When determining whether there was an absence of bad faith, the court particularly looks at "attempts" by the plaintiffs to notify the bankruptcy court about their claim. *White*, 283 F.3d at 478. In sum, then, to support a finding of judicial estoppel, the court must find that: (1) "[plaintiffs] assumed a position that was contrary to the one that [they] asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) [plaintiffs'] omission did not result from mistake or inadvertence." *White*, 617 F.3d at 478.

Pursuant to the requirements of the Bankruptcy Code, a debtor has an affirmative duty to disclose all assets at the time of filing a bankruptcy petition. 11 U.S.C. § 521. "It is well-settled that a cause of action is an asset that must be scheduled under § 521(1)." *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 424 (6th Cir. 2005); *see also*

*Eubanks*, 385 F.3d at 897. "Moreover, '[t]he duty of disclosure is a continuing one, and a debtor is required to disclose all potential causes of action.'" *Lewis*, 141 F. App'x at 424 (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999)).

There is no dispute plaintiffs failed to include this civil action in their bankruptcy petition. They did not list the action under "Schedule B - Personal Property" or the "Statement of Financial Affairs," both of which they signed under oath and penalty of perjury. Thus, by failing to disclose the claim in the bankruptcy court petition, but in asserting it now, plaintiffs are "asserting a position that is contrary to the one [they] asserted under oath in a prior proceeding." *White*, 617 F.3d at 476.

There is equally no dispute that the bankruptcy court adopted plaintiffs' contrary position when it discharged their debt. *Maxwell v. MGM Grand Detroit, LLC*, No. 03-73134, 2007 WL 2050795, at *4 (E.D. Mich. July 16, 2007) (citing *In re Johnson*, 345 B.R. 816, 822 (W.D. Mich. 2006); *Reynolds v. Comm'r*, 861 F.2d 469, 473 (6th Cir. 1988)).

> It is also undisputed the bankruptcy court adopted the prior position as part of a final disposition when it entered the order discharging Plaintiff. *See* [*White*, 617 F.3d] at 479 ("[O]n August 12, 2008, the bankruptcy court entered an order requiring [plaintiff] to make payments to the trustee. . . . At this point, the bankruptcy court adopted her position . . . ."); *see also Reynolds v. Comm'r*, 861 F.2d 469, 473 (6th Cir. 1988) ("when a bankruptcy court – which must protect the interests of all creditors – approves a payment from the bankruptcy estate on the basis of a party's assertion of a given position, that, in our view, is sufficient 'judicial acceptance' to estop the party from later advancing an inconsistent position"); *Tangwell v. Looby*, 109 F. App'x 12, 15 (6th Cir. 2004) ("In bankruptcy litigation, the requisite court approval of a settlement constitutes sufficient

7

> 'judicial acceptance' to prevent a party from later advancing an inconsistent position"). Thus, Defendant has established Plaintiff's assertion of a contrary position and the bankruptcy court's adoption of the prior position.

*Auday v. Wet Seal Retail, Inc.*, No. 1:10-CV-260, 2011 WL 1099796, at *3 (E.D. Tenn. Mar. 22, 2011).

The court's analysis does not end at this point, however, because plaintiffs contend that the failure to disclose their claim was an inadvertent mistake and, therefore, judicial estoppel does not apply. The court will consider the factors applicable to a finding of inadvertence.

First, plaintiffs cannot show that the failure to disclose was an inadvertent mistake based on their lack of knowledge of the factual basis of the undisclosed claim. This lawsuit had been filed almost a month before plaintiffs filed their Chapter 7 bankruptcy petition. Mr. Walker's contention that he made an "honest and good faith mistake" in not revealing his claim to the bankruptcy court because he was not sure about the validity of his silicosis claim borders on the disingenuous. There is nothing in the bankruptcy forms that asks a debtor to evaluate the probable success of an existing lawsuit or potential claim. All suits and potential claims are to be listed, and plaintiffs failed to include this lawsuit, although required under oath to do so. Further, this position is completely contradictory to Mr. Walker's deposition testimony in which he affirmatively stated that when this lawsuit was filed in August 2010 he believed he had a legitimate claim for damages against Moldex. In addition, as Moldex points out, while plaintiffs may have had doubts about the soundness

8

Case 2:10-cv-00164-RLJ   Document 61   Filed 07/25/11   Page 8 of 15   PageID #: 525

of their claim since it had been dismissed before under the TSCPA, once the current TSCPA deadline passed for defendants to object to Mr. Walker's medical documentation regarding his silicosis claim in January 2011, the doubts should have dissipated. Yet plaintiffs still did not make any effort to inform the bankruptcy court about the claim at that point. In fact, plaintiffs made no effort to notify the bankruptcy court about the lawsuit until after Moldex filed its motion for summary judgment on April 14, 2011.

As to the second factor, plaintiffs cannot demonstrate a lack of motive to conceal. By filing their bankruptcy petition, plaintiffs sought protection from their creditors, and it would be to their advantage not to include this lawsuit in which they seek *inter alia* judgment against the defendants "in a sum greatly in excess of the minimum jurisdictional limits." "It is always in a [bankruptcy] petitioner's interest to minimize income and assets." *Lewis*, 141 F. App'x at 426. "This is because damages recovered from a disclosed suit become property of the estate in bankruptcy, and any damages received will be used to satisfy the debts." *Maxwell*, 2007 WL 2050795, at *6 (citation omitted); *see also Auday*, 2011 WL 1099796, at *5 ("[I]t cannot be said Plaintiff had no motive for concealment. By filing for bankruptcy, Plaintiff sought and obtained judicial protection from her creditors."); *Pate v. United Parcel Serv., Inc.*, No. 3:05-cv-531, 2006 WL 2076795, at *2 (E.D. Tenn. July 24, 2006) ("A motive to conceal may be found where the debtor would reap a windfall by not disclosing an asset."). As with most debtors in bankruptcy, plaintiffs had a motive to minimize their assets and could do so by concealing this claim.

9

The final factor is whether there is an absence of bad faith. "[T]he burden of establishing the absence of bad faith is on the plaintiff when the defendant has shown that the plaintiff possessed knowledge of the factual basis of the claims and had motive to conceal them from the bankruptcy court." *Lisiecki v. Bank of Am., N.A.*, No. 08-12380, 2009 WL 1438550, at *3 (E.D. Mich. May 19, 2009) (citing *Maxwell*, 2007 WL 2050795, at *7). Plaintiffs can show a lack of bad faith by presenting evidence of their attempts to correct their initial omission. *White*, 617 F.3d at 480.

> Since the bankruptcy system depends on accurate and timely disclosures, the extent of these efforts, together with their effectiveness, is important. Furthermore, since judicial estoppel seeks to prevent parties from abusing the judicial process through cynical gamesmanship, the timing of [plaintiff's] effort is also significant. Consequently, *efforts to correct an omission that came before the Defendants filed their motion to dismiss are more important than efforts that came after the Defendants filed their motion to dismiss*.

*Id*. (emphasis added). *See also Lisiecki*, 2009 WL 1438550, at *3 ("Evidence of an absence of bad faith, such as where plaintiffs continuously took steps to notify the bankruptcy trustee of their pending litigation prior to the defendant's filing its motion to dismiss on the basis of judicial estoppel, will also be considered.") (citing *Eubanks*, 385 F.3d at 894-95).

Plaintiffs filed for bankruptcy protection after this civil action had been initiated, and their bankruptcy case proceeded for several months ending with the discharge of their debts, all while this action was pending. There is no showing whatsoever that during that time plaintiffs made any effort to inform the bankruptcy court of their claims in this case.

Moldex filed its motion for summary judgment on April 14, 2011, in which it argued that summary judgment was appropriate based on judicial estoppel. On April 29, 2011, after plaintiffs' Chapter 7 bankruptcy had been closed since January 7, 2011, the Trustee "discovered a potential asset in the form of pending litigation that may result in funds being available for distribution to creditors." [doc. 44-4, motion to reopen the bankruptcy case].

The court does not look favorably on plaintiffs' efforts to reopen the bankruptcy proceedings and amend the filings after defendants have filed their motion for summary judgment. Doing so would encourage gamesmanship, because the plaintiffs only fixed their filings after the defendants pointed out that those filings were inaccurate. *White*, 617 F.3d at 481 (citing *Barger v. City of Cartersville*, 348 F.3d 1289, 1297 (11th Cir. 2003) ("Allowing [a debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filing, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them.")); *see also Baker v. Rent-A-Center, Inc.*, No. 3:09-CV-156, 2010 WL 3896153, at *4 (E.D. Tenn. Sept. 30, 2010) (citing *White*); *Tyler v. Fed. Express Corp.*, 420 F. Supp. 2d 849, 859 (W.D. Tenn. 2005), *aff'd*, 206 F. App'x 500 (6th Cir. 2006) (applying judicial estoppel not inequitable even though bankruptcy deficiencies corrected) (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002) ("Allowing [plaintiff] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is

caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors' assets.")).

As support for their position that the failure to disclose was an inadvertent mistake, plaintiffs rely on *Eubanks v. CBSK Financial Group, Inc*., 385 F.3d 894 (6th Cir. 2004), a case in which the Sixth Circuit found that application of judicial estoppel was inappropriate. The actions of the plaintiffs in that case, however, are distinguishable from the actions taken by the plaintiffs herein.

> In *Eubanks*, despite initially omitting the potential civil claim from the bankruptcy schedule, the plaintiff[s] took multiple affirmative steps to amend the bankruptcy petition before the bankruptcy action was closed. These included: (1) notifying the bankruptcy trustee of the claim during a meeting of the creditors one month after the petition was filed; (2) asking the trustee on multiple occasions over several months whether he intended to pursue the claim on behalf of the estate; (3) requesting the bankruptcy court to hold a status conference on the issue of the claim; (4) unsuccessfully moving to allow the trustee to be substituted for themselves in the action after the action was filed and after the trustee refused to abandon the claim in the bankruptcy proceeding; and (5) filing an amendment to their original bankruptcy petition to add the claim to their bankruptcy schedules after the defendant filed a motion to dismiss on the basis of judicial estoppel.

*Coffelt v. Am. Frozen Foods, Inc*., No. 1:10-CV-69, 2010 WL 4238005, at *4 (E.D. Tenn. Oct. 21, 2010) (internal citation omitted). *Eubanks* is of no assistance to plaintiffs as it is clearly distinguishable. Plaintiffs herein have presented no evidence that they made any effort to notify the bankruptcy court of their claims until after Moldex filed its motion for summary judgment, revealing that the asset had been concealed. *Scott v. Dress Barn, Inc*.,

12

No. 04-1298-T-AN, 2006 WL 962534, at *4 (W.D. Tenn. Apr. 12, 2006) ("Plaintiff has presented no evidence that she took steps to apprise the bankruptcy court of this lawsuit until she was 'caught' concealing the asset."); *Maxwell*, 2007 WL 2050795, at *8 (neither plaintiff "presented any evidence that she took steps to apprise the bankruptcy court of the case here until she was 'caught' concealing it.").

The court is also not persuaded by plaintiffs' arguments regarding the reopening of the bankruptcy case and the request for special counsel. In *Maxwell*, one of the plaintiffs filed for Chapter 7 protection while her employment discrimination case was pending.[2] She did not list her claim on her bankruptcy schedules and forms; her debts were discharged; and her case was closed. The defendant in her employment action filed a motion for summary judgment based on judicial estoppel, and the plaintiff then filed a motion to reopen her bankruptcy case. The bankruptcy court reopened the case, and the plaintiff stated she intended to file amended schedules with the bankruptcy court.

The district court was unpersuaded by the arguments that steps had been taken in the bankruptcy court to rectified the omissions and that any recovery would be used to pay creditors and bankruptcy fees. The district court stated:

> No litigant engages in self-serving contradiction when the first representation is made to a Court. Here, when Debtor originally filed his bankruptcy petition and failed to schedule the claim against [the defendant], no judicial estoppel argument arose.

---

[2] Another plaintiff in *Maxwell* filed a Chapter 13 bankruptcy and did not disclose her pending discrimination lawsuit. She filed a petition to reopen her bankruptcy case after the defendant filed its motion for summary judgment based on judicial estoppel.

13

> Only when the subsequent representation was made (in the United States District Court case) did the estoppel issue arise. It seems self-evident that if the principle is invoked to protect the integrity of the judiciary, then it must be invoked in the Court in which the apparent self-serving contradiction occurred and in which the defense is first asserted.
>
> Accordingly, regardless of what the bankruptcy court decides to do with regards to the plaintiffs' petitions to reopen their bankruptcy cases and amend their schedules and financial statements, *this* Court is the proper authority to determine whether judicial estoppel should be applied to dismiss their claims in the case here.

*Maxwell*, 2007 WL 2050795, at *9 (emphasis in original) (citations omitted). The district court granted summary judgment to the defendants. Likewise, this court is the proper authority to determine whether judicial estoppel applies to dismiss plaintiffs' claims herein. The court finds that judicial estoppel applies to plaintiffs' claims, and they are barred from pursuing them in this case. Having so found, the court does not need to reach Moldex's alternate basis for summary judgment, that plaintiffs lack standing to pursue this action.

IV.

*Conclusion*

Accordingly, for the reasons discussed above, the motions for summary judgment filed by Moldex and 3M will be granted, and this case will be dismissed. An order consistent with this opinion will be entered.

14

ENTER:


        <u>    s/ Leon Jordan    </u>
        United States District Judge